FILED

APR 15 2010

**ORDERED PUBLISHED**

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

### UNITED STATES BANKRUPTCY APPELLATE PANEL

### OF THE NINTH CIRCUIT

In re:                                )      BAP No. CC-09-1314-MoPaB
                                       )
FRANCES MICHAEL FITZGERALD             )      Bk. No. ND 09-12110-RR
                                       )
            Debtor.                    )
                                       )
_____       )
                                       )      APR 2 1 2010
FRANCES MICHAEL FITZGERALD,            )
                                       )      CLERK U.S. BANKRUPTCY COURT
            Appellant,                 )      CENTRAL DISTRICT OF CALIFORNIA
                                       )
v.                                     )      **O P I N I O N**
                                       )
NINN WORX SR, INC.; JERRY              )
NAMBA, TRUSTEE; THE JOHN               )
LELDON GRAY TRUST,                     )
                                       )
            Appellees.                 )
_____       )

Argued and Submitted on March 19, 2010
at Pasadena, California

Filed - April 15, 2010

Appeal from the United States Bankruptcy Court
for the Central District of California

Hon. Robin L. Riblet, Bankruptcy Judge, Presiding.

_____

Before: MONTALI, PAPPAS and BRANDT,[1] Bankruptcy Judges.

_____

[1]   Hon. Philip H. Brandt, Bankruptcy Judge for the Western
District of Washington, sitting by designation.

1  MONTALI, Bankruptcy Judge:

2

3      In this decision we revisit the heightened duty of a
4  bankruptcy court to make an independent analysis and evaluation
5  in the all too familiar situation of a trustee in bankruptcy
6  selling to a defendant the estate's causes of action against that
7  defendant.  Our conclusion that such an analysis and evaluation
8  should have been made in this case is bolstered by recent United
9  States Supreme Court precedent reminding bankruptcy judges of
10  their duty to make the inquiry regardless of the manner in which
11  the parties have presented them with the question.

12      Debtor-Appellant, Frances Michael Fitzgerald ("Fitzgerald")
13  appeals an order of the bankruptcy court authorizing the
14  chapter 7[2] trustee-Appellee's ("Trustee") sale of certain assets
15  of Fitzgerald's estate to Appellee, the John Leldon Gray Trust
16  (the "Trust," collectively with Trustee, "Appellees").  For the
17  foregoing reasons, we REVERSE the sale order.[3]

18                          **I. BACKGROUND**

19  **A.   Prepetition Background.**

20      Fitzgerald, a/k/a Michael Ninn, formed N Worx Media, Inc.
21  ("NWM"), a company that owned and distributed adult films
22  directed, edited, and produced by Fitzgerald.  In June 2007, John
23  Gray ("Gray"), as trustee of the Trust, approached Fitzgerald
24  with a proposal to create a new corporation that would market and

25  ─────────────────────
26      [2]  Unless otherwise indicated, all chapter, section and rule
     references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and
27  to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

28      [3]  We GRANT Appellees' Request for Judicial Notice filed
     concurrently with their response brief and excerpts of record.

1  distribute Fitzgerald's library of films, and finance the
2  production of future adult films.  One month later, Fitzgerald
3  and the Trust formed Ninn Worx SR, Inc. ("NWSR"), with Fitzgerald
4  contributing to NWSR his 100% interest in NWM in exchange for
5  $1,000 and a 49% interest in NWSR.  The Trust owned the remaining
6  51% interest.  Fitzgerald was appointed chief executive officer
7  of NWSR, and continued to work as a film director.

8      The collaboration was short-lived.  Fitzgerald was relieved
9  of his duties as chief executive officer of NWSR on or around May
10  30, 2008.  Relations between Fitzgerald and Gray further
11  deteriorated and in August, 2008, NWSR sued Fitzgerald in Los
12  Angeles County Superior Court for breach of fiduciary duty,
13  tortious interference, and violation of the California Business
14  and Professions Code ("State Court Action").  Fitzgerald filed a
15  cross-complaint against NWSR, Gray, the Trust, and other third
16  parties.  NWSR demurred.  Fitzgerald responded by filing an
17  amended cross-complaint alleging ten causes of action, praying
18  for damages of at least $1 million for each claim.  NWSR again
19  demurred.  On February 25, 2009, the state court sustained the
20  demurrer to eight of Fitzgerald's causes of action, granting him
21  leave to amend all eight, and overruled the demurrer with respect
22  to two causes of action: conversion and accounting.  On or around
23  March 17, 2009, Tim Riley ("Riley"), new counsel for Fitzgerald
24  in the State Court Action, filed a second amended cross-complaint
25  alleging various cross-claims (the "Cross-Claims") to which NWSR
26  filed a demurrer and a motion to strike.

27  **B.   Postpetition Background.**

28      Assisted by bankruptcy attorney Elva Wallace ("Wallace"),

1  Fitzgerald filed a chapter 7 petition on June 2, 2009.  He did
2  not list the Cross-Claims in his schedules, and valued his 49%
3  interest in NWSR at $0.00.  The section 341 meeting of creditors
4  was scheduled for July 27, 2009.  On June 22, 2009, NWSR filed in
5  state court a Notice of Stay of Proceedings due to Fitzgerald's
6  bankruptcy filing.

7       On July 13, 2009, Fitzgerald moved to dismiss his bankruptcy
8  case so he could continue to negotiate a settlement of the State
9  Court Action.[4]  After some docketing and other procedural errors,
10 Wallace eventually set Fitzgerald's dismissal motion for hearing
11 on September 8, 2009.

12      On August 25, 2009, NWSR and Trustee filed their combined
13 opposition to Fitzgerald's motion to dismiss, opposing it on both
14 substantive and procedural grounds.  Substantively, the
15 opposition noted that an asset sale to Gray (as trustee of the
16 Trust) was in the works, which would bring to the estate
17 approximately $60,000 to pay unsecured claims that totaled just
18 over $40,000.

19      On August 28, 2009, Trustee filed an ex parte motion
20 requesting a continuance of the September 8 dismissal hearing
21 because he was unable to attend, and because he opposed dismissal
22 prior to the pending asset sale, which he expected to occur
23 sometime around September 28, 2009.  For reasons unknown, the
24 bankruptcy court did not act on Trustee's continuance motion, and
25 the hearing went as Wallace had scheduled on September 8.  The
26 only party to appear at the hearing was NWSR, through counsel.

27 _____

28      [4]  Fitzgerald filed an amended motion to dismiss his chapter
   7 case two days later, reflecting some minor language changes.

1  On September 11, 2009, the bankruptcy court entered an order
2  denying Fitzgerald's motion to dismiss for his failure to serve
3  all creditors.

4      On August 31, 2009, Trustee filed and served a motion to
5  sell to the Trust (1) Fitzgerald's 49% interest in NWSR, and (2)
6  Fitzgerald's Cross-Claims "for up to $60,000" ("Sale Motion").
7  The $60,000 figure was the aggregate of filed, unsecured claims
8  of approximately $40,000, plus expected administrative fees and
9  expenses.

10      Trustee asserted that the proposed sale was in the best
11  interest of the estate because, based on the sale price and the
12  amount of unsecured claims, unsecured creditors would likely be
13  paid in full.  He further asserted the proposed sale was fair and
14  reasonable considering that Fitzgerald's 49% interest (which
15  Fitzgerald valued at $0.00) had no value to anyone other than the
16  Trust because distributions to NWSR shareholders were subordinate
17  to its $2 million debt, which, under its current financial
18  situation, was unlikely to be paid in the foreseeable future.
19  With respect to the Cross-Claims, Trustee offered no analysis
20  regarding their value or the costs of litigation, but stated that
21  the sale obviated the need for Trustee to prosecute and defend
22  them.  Finally, although Trustee asserted in the Sale Motion that
23  the proposed sale was entered into in good faith, he did not seek
24  a "good faith" finding under section 363(m) or present any
25  evidence of the Trust's good faith.[5]  Trustee set the sale

26
27      [5]  Section 363(m) provides:
28          (m) The reversal or modification on appeal of an
                                            (continued...)

1  hearing for September 23, 2009.

2      Just two days prior to the sale hearing, Fitzgerald filed an

3  amended schedule B, which changed the value of his 49% interest

4  in NWSR from $0.00 to $5.5 million and, for the first time,

5  identified an interest in 137 films with a value of $1.5 million.

6  Again, Fitzgerald did not list the Cross-Claims.  He also filed

7  an amended schedule F, which now indicated that unsecured claims

8  totaled $784,366.87.[6]

9      **1.   The Sale Hearing.**

10      The sale hearing went forward on September 23, 2009.  No

11  written opposition was filed but Wallace and Riley, appearing for

12  Fitzgerald and his life partner, Suzette Rowe ("Rowe"), attempted

13  orally to oppose it.

14      Initially, the bankruptcy court granted the Sale Motion

15  because Fitzgerald failed to file any written opposition, and

16  Local Bankruptcy Rule 9013-1(h) of the Central District of

17  California deems such silence as consent.  In response, Wallace

18  stated that Fitzgerald favored the sale if Trustee were selling

19  the assets for "full value," but she needed a two-week

20  continuance to file an opposition, which she failed to file

21

22      [5](...continued)
            authorization under subsection (b) or (c) of this
23          section of a sale or lease of property does not
            affect the validity of a sale or lease under such
24          authorization to an entity that purchased or
            leased such property in <u>good faith</u>, whether or not
25          such entity knew of the pendency of the appeal,
            unless such authorization and such sale or lease
26          were stayed pending appeal (emphasis added).

27      [6]  The amended schedule F was referred to at the sale
    hearing, but it was not before the bankruptcy court.  It is not
28  part of the record on appeal.

                          - 6 -

1  previously because she was out of town.  Wallace further stated

2  that on September 22, 2009, she filed two unsecured claims

3  against the estate, one for $550,000 on behalf of Rowe's mother,

4  who had lent Fitzgerald money for a home, and one for $192,000 on

5  behalf of Riley, for his attorneys fees incurred to date in the

6  State Court Action.  The court denied Wallace's request, noting

7  that she had received sufficient notice to file an opposition,

8  and it again granted the Sale Motion.

9      Riley then stated that on September 14, he had drafted a

10 reply to NWSR's and Trustee's combined opposition to Fitzgerald's

11 dismissal motion for Wallace to file.[7]  The court replied that it

12 never received Riley's brief.  Riley explained that he opposed

13 the $60,000 sale price as a "travesty" considering the

14 relationship between Gray and Fitzgerald and the fact that the

15 Trust was improperly buying its way out of the State Court

16 Action, a matter in which Riley had invested $192,000.  He then

17 requested a 30-day continuance to file an opposition, which the

18 court denied.

19     It then came to the court's attention, and Trustee's

20 surprise, that Rowe wished to overbid, which the court decided to

21 allow.  After a brief recess to discuss the bidding procedure,

22 Trustee informed the court that claims against Fitzgerald's

23 estate totaled around $40,000, but he had learned during the

24 recess that both bidding parties asserted respective claims that

25

26 [7] Wallace filed Riley's reply brief on September 21, just
   two days before the sale hearing, but did not provide a copy of
27 it to the bankruptcy court.  Riley's brief, and supporting
   declaration, focused primarily on supporting the dismissal of
28 Fitzgerald's chapter 7 case, but also objected to the proposed
   sale of assets to the Trust for $60,000.

- 7 -

1   would increase the claims universe to "$1 million and so forth."

2   Trustee then stated, "[b]ut it seems to be somewhat equal on

3   either side, so I don't think it's going to impact this bid," and

4   recommended that bidding proceed.[8]  The auction commenced, with

5   Rowe's top bid of $95,000 losing to the Trust's bid of $100,000.

6        Riley then interjected, contending that the parties had

7   agreed during the recess that Rowe's offer would be considered a

8   better offer than the Trust's since Riley was willing to

9   compromise his $192,000 claim for fees, and Rowe's mother would

10  also compromise her $550,000 claim.  He also asserted that Gray's

11  threatened claim of $1 million was a fraud.  Riley then asked for

12  a continuance, but alternatively offered an additional $5,000 of

13  his own funds to Rowe's bid.  The court replied that Riley did

14  not have the funds on his person, and instructed him to sit down.

15       Counsel for the Trust then informed the court, which Trustee

16  confirmed, that neither Fitzgerald nor Wallace appeared at the

17  section 341 meeting of creditors on July 27, 2009, or at the

18  continued meeting on September 21, 2009, and, had they done so,

19  perhaps Fitzgerald could have informed Trustee about his opinion

20  on the assets' actual value.  Wallace responded that they did not

21  attend the first meeting because they believed Fitzgerald's

22  bankruptcy case would be dismissed.  As for the September 21

23  meeting, Wallace acknowledged receiving Trustee's notice

24  continuing it to September 21, but contended there was some

25

26      [8]  While not completely clear from Trustee's statement, from
    the colloquy that followed and statements made to us at oral
27  argument, we take this to mean that if Rowe were the successful
    bidder, her mother's and Riley's claims would be withdrawn; if
28  the Trust were successful, its $1 million claim would not share
    in the sales proceeds.

- 8 -

1   confusion about it because the docket indicated the meeting was

2   actually held on August 21.[9]   Trustee informed the court that the

3   section 341 meeting occurred on September 21.   Upon hearing this,

4   the court swiftly confirmed the sale for $100,000 to purchaser,

5   the Trust.

6       On October 8, 2009, the bankruptcy court entered an order

7   granting Trustee's Sale Motion ("Sale Order").   Although not

8   prayed for or determined at the sale hearing, the Sale Order

9   found the Trust to be a "good faith" purchaser pursuant to

10  section 363(m).   Fitzgerald did not file any motions under Fed.

11  R. Civ. P. 59 or 60, incorporated by Rule 9023 and Rule 9024, in

12  response to the Sale Order, or seek a stay of the sale.

13  Fitzgerald filed a premature notice of appeal on October 2, 2009,

14  followed by a timely amended notice of appeal on October 13,

15  2009.

16      **2.   Post-Sale Events.**

17      The sale closed on October 21, 2009.   Trustee received

18  $100,000, which has been deposited into his trust account.   Six

19  days later, the Trust sold the 49% interest in NWSR.

20      On November 12, 2009, the state court granted the Trust and

21  Trustee's request to dismiss Fitzgerald's Cross-Claims with

22  prejudice.   On November 18, 2009, NWSR served Fitzgerald and

23  Riley with the Notice of Entry of Dismissal.   No party lodged any

24

25       [9]  Fitzgerald contends on appeal that he did not receive
     notice of section 341 meetings of creditors that took place on
26   August 21 and August 26, 2009.   Although the August 21 docket
     entry seems to suggest this, careful examination of the document
27   filed reveals that no meetings of creditors took place on either
     of those dates.   Further, Trustee confirmed at the sale hearing
28   that no such meetings occurred.

1  objections or sought any other form of relief.

## II. JURISDICTION

3      The bankruptcy court had jurisdiction under 28 U.S.C. § 157.

4  We address below our jurisdiction over the appeal under 28 U.S.C.

5  § 158.[10]

## III. ISSUES

7  1.   Is the appeal moot?

8  2.   Did Fitzgerald preserve his objection to the Sale Order?

9  3.   Did the bankruptcy court abuse its discretion by issuing the

10 Sale Order?

## IV. STANDARD OF REVIEW

12     Sales under section 363 are reviewed for abuse of

13 discretion.   Simantob v. Claims Prosecutor, LLC. (In re

14 Lahijani), 325 B.R. 282, 287 (9th Cir. BAP 2005).

## V. DISCUSSION

16 **A.   Jurisdiction Over The Appeal.**

17     Appellees contend the appeal is moot because: (1) it was not

18 stayed pending appeal; (2) the sale was conducted in good faith

19 under section 363(m); (3) the Cross-Claims have been dismissed

20 with prejudice; and (4) the Trust has sold the 49% interest in

21 NWSR for value to a third party.   As the party advocating

22 mootness, Appellees have the burden of establishing its

---

24 [10]   Fitzgerald's standing would initially appear to be an
issue since this is a chapter 7 case.   We have an independent
25 duty to examine jurisdiction, and we lack jurisdiction over the
appeal if Fitzgerald lacks standing.   Lee v. Oregon, 107 F.3d
26 1382, 1387 (9th Cir. 1997).
       The bankruptcy court noted that perhaps this is a surplus
27 estate, which could provide Fitzgerald standing because of his
pecuniary interest.   Nangle v. Surratt-Sales (In re Nangle), 288
28 B.R. 213, 216 (8th Cir. BAP 2003).   Appellees do not contest this
issue, and therefore we assume it to be the case.

1 │ application.  Suter v. Goedert, 504 F.3d 982, 986 (9th Cir.

2 │ 2007).

3 │    **1.   No Stay Order.**

4 │    Appellees argue that Fitzgerald's failure to obtain a stay

5 │ of the Sale Order renders his appeal moot.  Fitzgerald concedes

6 │ that he did not obtain a stay, as allowed by Rule 8005.  We

7 │ disagree with Appellees.

8 │    Even though an appeal from an order approving a sale is moot

9 │ if the sale has not been stayed and is consummated, there are

10 │ several exceptions.  Sw. Prods., Inc. v. Durkin (In re Sw.

11 │ Prods.), 144 B.R. 100, 102-03 (9th Cir. BAP 1992).  One exception

12 │ to the mootness rule is for appeals questioning whether the

13 │ purchaser purchased the property in good faith.  Id.; see also

14 │ 11 U.S.C. § 363(m).

15 │    Because, as we explain below, there was no evidence in the

16 │ record to support a good faith finding under section 363(m), the

17 │ appeal is not moot for Fitzgerald's failure to obtain a stay.

18 │    **2.   Statutory Mootness Under Section 363(m).**

19 │    While a finding of "good faith" is not an essential element

20 │ for approval of a sale under section 363(b), such a determination

21 │ becomes important with respect to potential mootness when an

22 │ appeal is taken from the order authorizing the sale.  Thomas v.

23 │ Namba (In re Thomas), 287 B.R. 782, 785 (9th Cir. BAP 2002).

24 │    Appellees contend that there is "substantial evidence" to

25 │ support the "good faith" determination.  We disagree.  On the

26 │ contrary, we see absolutely no evidence in the record to support

27 │ a "good faith" finding under section 363(m).  While Trustee noted

28 │ in the Sale Motion that the sale was entered into in good faith,

1   Trustee did not request such a finding in the Sale Motion, nor

2   did the Trust submit a declaration or any other evidence

3   supporting this fact.  Further, at the sale hearing, neither

4   Trustee nor the Trust presented any evidence of the Trust's good

5   faith or requested any such finding, nor did the bankruptcy court

6   make any such determination.

7       The boilerplate "good faith" finding in the Sale Order does

8   not suffice under section 363(m), and the bankruptcy court should

9   not have signed such an order without an evidentiary foundation.

10  T.C. Investors v. Joseph (In re M Capital Corp.), 290 B.R. 743,

11  752 (9th Cir. BAP 2003).  "Unless and until 'good faith' has been

12  determined, the appeal is not moot under section 363(m)."

13  Thomas, 287 B.R. at 785.

14      Accordingly, without a proper "good faith" finding under

15  section 363(m), there is no safe harbor to shield the Sale Order

16  from appellate review and appellate remedies.  M Capital Corp.,

17  290 B.R. at 752.

18      **3.   Equitable Mootness.**

19      Even though Fitzgerald's appeal is not statutorily moot

20  under section 363(m), his appeal may still be moot under the

21  general principles of mootness.  Suter, 504 F.3d at 987.  As

22  Appellees note, the sale has closed and the 49% interest in NWSR

23  has been sold to a third party for value.

24      Although an appeal is moot if the appellate court is unable

25  to grant any relief whatsoever, the appeal is not equitably moot

26  if the appellate court can fashion effective relief.  Spirtos v.

27  Moreno (In re Spirtos), 992 F.2d 1004, 1006 (9th Cir. 1993).

28      As for the Cross-Claims, "[w]here the asset 'sold' without a

1  stay is a lawsuit and 'disposal' of the asset is a dismissal, the

2  appropriate inquiry is whether the dismissal of the lawsuit could

3  be undone." Suter, 504 F.3d at 987.   In Suter, defendant law

4  firm purchased estate's interest in plaintiff-debtors' legal

5  malpractice claim at a bankruptcy court auction.   After the sale,

6  the law firm entered into a stipulation with the bankruptcy

7  trustee to dismiss the malpractice case pending before the Nevada

8  Supreme Court.   The debtors appealed the sale order to the

9  district court, and the law firm moved to dismiss for mootness

10 because the malpractice case had been dismissed.   The district

11 court agreed, and granted the law firm's motion.   Debtors

12 appealed.   The Ninth Circuit reversed.   It determined that the

13 district court presumed erroneously the debtors' appeal was moot

14 because their interest in the malpractice case was extinguished

15 due to its dismissal.   "Without affirmatively demonstrating that

16 the [debtors] have no recourse under Nevada law were they

17 successful in the district court on their appeal of the

18 bankruptcy court's decision to approve the compromise, mootness

19 is not established." Id. at 986.

20     Only Fitzgerald's Cross-Claims have been dismissed; the

21 plaintiffs' claims against Fitzgerald are presumably still

22 pending, subject to the stay of proceedings.   All Appellees argue

23 on appeal is that the Cross-Claims have been dismissed with

24 prejudice.   They have not met their burden under Suter to

25 demonstrate affirmatively that Fitzgerald's Cross-Claims could

26 not be revived.   As such, although we offer no opinion on this,

27 Fitzgerald or Trustee may have some effective relief under

28 California law as to the Cross-Claims.

- 13 -

1       As for the subsequent sale of the 49% interest in NWSR, sale
2   to a third party is a classic example of mootness in the
3   bankruptcy context because it precludes meaningful relief.  Baker
4   & Drake, Inc. v. Pub. Serv. Comm'n of Nev. (In re Baker & Drake,
5   Inc.), 35 F.3d 1348, 1351 (9th Cir. 1994).  Here, the first sale
6   was to insider the Trust - not a third party.  Appellees confirm
7   that six days later "the Trust sold the 49% interest in NWSR to a
8   third party purchaser for value."  What Appellees fail to reveal
9   in their brief, as well at oral argument, is the identity of this
10  third party, its relationship, if any, with Gray or the Trust, or
11  the amount paid.  The absence of any specifics from Appellees
12  about this second sale purchaser makes us question whether relief
13  cannot be afforded.  Again, Appellees have not shown that
14  Fitzgerald or Trustee have no recourse.

15      Accordingly, on this record, we are unable to determine
16  conclusively the mootness of this appeal.  Having established our
17  jurisdiction, and concluding that we face no impediment to review
18  the Sale Order, we turn to its merits.

19  **B.    Fitzgerald Preserved His Objection To The Sale Order.**

20      Appellees contend that Fitzgerald's failure to file an
21  opposition to the Sale Motion means that he consented to the sale
22  and waived any right to object to it on appeal.  We reject this
23  argument.  Fitzgerald clearly objected at the sale hearing, and
24  the bankruptcy court considered his objections.  Therefore,
25  despite the procedural anomalies, Fitzgerald did not consent to
26  the sale or waive his right to object to it on appeal.

27      We acknowledge that some of Fitzgerald's arguments against a
28  sale ring hollow given Rowe's active participation in the

- 14 -

1  bidding.  We are satisfied, however, that the crux of

2  Fitzgerald's complaint is the sale of the Cross-Claims without a

3  proper examination of their worth, not the sale of his 49%

4  interest in NWSR.  The Cross-Claims would have remained available

5  for prosecution had Rowe acquired them and, as we explain below,

6  it is the sale of those claims to one of the defendants that

7  Fitzgerald repeatedly challenged.

8  **C.    The Bankruptcy Court Abused Its Discretion By Issuing The**

9  **       Sale Order.[11]**

10 **     1.    Good Faith.**

11     Fitzgerald, who appears pro se on appeal, contends that

12 based on the volatile history between Gray and him, the

13 bankruptcy court erred when it found the Trust to be a "good

14 faith" purchaser under section 363(m) in the Sale Order.

15     The first requirement of a "good faith" purchaser is that

16 there be an identifiable purchaser.  Ferrari N. Am., Inc. v. Sims

17 (In re R.B.B., Inc.), 211 F.3d 475, 478-80 (9th Cir. 2000).

18 Secondly, generally the purchaser gives "value."  Ewell v.

19 Diebert (In re Ewell), 958 F.2d 276, 281 (9th Cir. 1992).

20     Fitzgerald spends much time in his briefs alleging

---

22 [11]  Fitzgerald contends he did not receive sufficient notice
   of the Sale Motion.  Our review of the docket shows to the
23 contrary.  Local Bankruptcy Rule 9013-1(d) for the Central
   District of California dictates that such motions require notice
24 of at least 21 days.  Trustee's proof of service indicates that
   the Sale Motion and supporting papers were served on August 28,
25 2009; the docket reflects that Trustee's papers were filed on
   August 31, 2009.  Wallace presumably received notice sometime on
26 or around August 29, or, at minimum, she received electronic
   notice of the filing on August 31.  The sale hearing was set for
27 September 23, 2009.  Either way, Fitzgerald received sufficient
   notice.  Plus, Fitzgerald, Riley and Rowe appeared at the sale
28 hearing and Rowe bid.

1  conspiracy, fraud, and collusion between Trustee and the Trust
2  regarding the asset sale, in particular with respect to the
3  Cross-Claims that he contends could be worth millions of dollars.
4  He questions the propriety of even selling the Cross-Claims to
5  the defendant in the lawsuit.  Leaving aside the conspiracy
6  allegation, Fitzgerald did raise this "value" issue, to an
7  extent, at the sale hearing.  Riley explained to the bankruptcy
8  court that selling the Cross-Claims for $60,000 was a travesty,
9  especially considering the relationship between Gray and
10 Fitzgerald and the money invested in the State Court Action to
11 date.  At oral argument before us, Fitzgerald asserted that
12 Trustee failed to investigate what the Cross-Claims might be
13 worth.  Neither Appellee offered us any helpful information to
14 the contrary.

15      As to the propriety of selling the Cross-Claims, no one
16 disputes that Gray or the Trust bought them with the intention to
17 buy their way out of the State Court Action.  However, causes of
18 action that exist independent of the bankruptcy can be, and often
19 are, sold by bankruptcy trustees under section 363(b).  Lahijani,
20 325 B.R. at 288; 11 U.S.C. § 541(a)(1).  Therefore, the Trust was
21 a perfectly legitimate buyer.

22      Regarding the Cross-Claims' value, Fitzgerald offered no
23 competent evidence prior to or at the sale hearing to show that
24 the market value of the assets was something other than $100,000.
25 Fitzgerald never disclosed the Cross-Claims in his schedules and,
26 up until two days before the sale hearing, Fitzgerald considered
27 the value of his 49% interest in NWSR at $0.00.  Wallace stated
28 at the sale hearing that Fitzgerald had no objection to the sale

1  if the assets were being sold for "full value," but she failed to

2  state what the "full value" was.  Riley, other than contending

3  that the sale was a "travesty," also failed to assert what he

4  thought was the proper market value of the Cross-Claims.

5      Nonetheless, despite Fitzgerald's lack of contrary evidence,

6  his argument does have some merit.  The price achieved by an

7  auction is ordinarily assumed to approximate market value when

8  there is competition by an appropriate number of bidders.

9  Lahijani, 325 B.R. at 289.  However, when competition is

10 constrained, the price is less likely to be reliable and should

11 be examined more carefully.  Id.  The sale of a cause of action

12 to a defendant in circumstances in which the plaintiff is the

13 only competition is an example of constrained competition that

14 warrants more scrutiny.  Id.

15     Here, the bidders were a cross-defendant, the Trust (which

16 apparently was acting in the interest of all fellow cross-

17 defendants including Gray and NWSR), and cross-plaintiff's life

18 partner Rowe.  Thus, due to the nature of the parties involved,

19 the $60,000 sale price calls for a higher level of scrutiny, and

20 Trustee bore the burden to examine it more carefully.  Id.

21     In the Sale Motion, Trustee offered a satisfactory analysis

22 on the value for the 49% interest in NWSR, asserting that based

23 on Fitzgerald's value of $0.00, and due to the nature of the

24 asset, it had no meaningful market value.  Therefore, presumably,

25 the $60,000 sale price was driven primarily by the value of the

26 Cross-Claims.  Other than Trustee's contention that selling the

27 Cross-Claims would obviate the estate's need to prosecute them,

28 thereby reducing administrative expenses, and his declaratory

- 17 -

1  statement that he "reviewed the docket and certain key pleadings

2  in the [State Court Action]," Trustee offered no analysis

3  whatsoever regarding the value of the Cross-Claims or why, in his

4  business judgment, $60,000 was a fair and reasonable price.  This

5  clearly falls short of what is required of a bankruptcy trustee

6  under Lahijani.

7      Once faced with opposition to the sale, the bankruptcy court

8  had the ultimate responsibility to assure that optimal value was

9  being realized by the estate.  Id. at 288-89.  The debtor in a

10 solvent estate is a beneficiary of the trust administered by a

11 bankruptcy trustee, and it is not enough for Trustee to have

12 stopped his inquiry when he determined that the sale price was

13 adequate as long as it covered administrative expenses and the

14 claims of non-insider creditors.  Because of this failure, and

15 the reasons discussed below, we must reverse the Sale Order.

16     **2.    Compromise Under Rule 9019.**

17     While not raised precisely by Fitzgerald on appeal, we have

18 the discretion, if not the obligation, to ensure that bankruptcy

19 law is properly applied.  United Student Aid Funds, Inc. v.

20 Espinosa, No. 08-1134, 2010 WL 1027825, at *9, fn. 14, 15 (U.S.

21 Mar. 23, 2010).[12]  The sale at issue here was both a sale under

22 section 363 and a compromise under Rule 9019.  The bankruptcy

23 court erred when it issued the Sale Order without performing the

24 analysis required by the case law regarding compromises under

25

26     [12]  We acknowledge that Espinosa instructs that bankruptcy
   courts have a duty to ensure compliance with statutory
27 directives; although we see no reason why the same admonition
   should not apply to case-developed instructions, we need not
28 resolve that question in this case.

- 18 -

1 | Rule 9019.

2 | In <u>Lahijani</u>, we determined that when a sale amounts to an

3 | acquisition of causes of action by a defendant, it must also be

4 | analyzed as a compromise for which the court has an independent

5 | duty to determine whether it is "fair and equitable."  325 B.R.

6 | at 290.  Notably, in <u>Lahijani</u> a cause of action was being sold to

7 | a defendant over the objection of creditors.  Here, the objector

8 | is the debtor.  However, as noted previously, if Fitzgerald's is

9 | a surplus estate, then he could have an interest in the

10 | settlement funds.  Further, Riley, who is a creditor, made his

11 | objection known at the sale hearing.  Therefore, <u>Lahijani</u>

12 | applies.

13 | The fair and equitable settlement standard under Rule 9019

14 | requires consideration of: (1) probability of success in the

15 | litigation; (2) collectability; (3) complexity, expense,

16 | inconvenience, and delay attendant to continued litigation; and

17 | (4) the interests of creditors, which are said to be "paramount."

18 | <u>Martin v. Kane (In re A&C Props.)</u>, 784 F.2d 1377, 1381 (9th Cir.

19 | 1986).  These four factors are often referred to as the "<u>A&C</u>

20 | factors."  Trustee did not set forth any of the <u>A&C</u> factors in

21 | the Sale Motion or his supporting declaration, nor did he request

22 | that the court address any such factors at the sale hearing.

23 | Confronted by what was actually, in part, a motion to approve a

24 | compromise under Rule 9019, the bankruptcy court made no findings

25 | on any of the four <u>A&C</u> factors at the sale hearing or in the Sale

26 | Order.

27 | By not applying the fair and equitable settlement standards,

28 | the <u>A&C</u> factors, the bankruptcy court applied an incorrect legal

- 19 -

1  standard and thereby abused its discretion.  <u>Lahijani</u>, 325 B.R.

2  at 287.  Consequently, we REVERSE the Sale Order.

3  **VI. CONCLUSION**

4      Based on the foregoing reasons, we REVERSE.[13]

---

27      [13]  Appellees filed a Motion to Strike Portions of
Appellant's Excerpts of Record and a Motion to Strike Portions of

28  Appellant's Declaration.  These motions will be disposed of by a
separate order entered concurrently with this Opinion.

# U.S. Bankruptcy Appellate Panel
# of the Ninth Circuit

125 South Grand Avenue, Pasadena, California 91105
Appeals from Central California (626) 229-7220
Appeals from all other Districts (626) 229-7225

## NOTICE OF ENTRY OF JUDGMENT

**BAP No.:** CC-09-1314-MoPaB

**RE:** FRANCES MICHAEL FITZGERALD

A separate Judgment was entered in this case on **04/15/2010.**

## BILL OF COSTS:

Bankruptcy Rule 8014 provides that costs on appeal shall be taxed by the Clerk of the Bankruptcy Court. Cost bills should be filed with the Clerk of the Bankruptcy Court from which the appeal was taken. 9th Cir. BAP Rule 8014-1

## ISSUANCE OF THE MANDATE:

The mandate, a certified copy of the judgment sent to the Clerk of the Bankruptcy Court from which the appeal was taken, will be issued 7 days after the expiration of the time for filing a petition for rehearing unless such a petition is filed or the time is shortened or enlarged by order. See Federal Rule of Appellate Procedure 41.

## APPEAL TO COURT OF APPEALS:

An appeal to the Ninth Circuit Court of Appeals is initiated by filing a notice of appeal with the Clerk of this Panel. The Notice of Appeal should be accompanied by payment of the $455 filing fee and a copy of the order or decision on appeal. Checks may be made payable to the U.S. Court of Appeals for the Ninth Circuit. See Federal Rules of Appellate Procedure 6 and the corresponding Rules of the United States Court of Appeals for the Ninth Circuit for specific time requirements.

## CERTIFICATE OF MAILING

The undersigned, deputy clerk of the U.S. Bankruptcy Appellate Panel of the Ninth Circuit, hereby certifies that a copy of the document on which this certificate appears was transmitted this date to all parties of record to this appeal.

**By:** Freddie Brown, Deputy Clerk

**Date:** April 15, 2010